We will now proceed to the second part of the case, which is United States of America v. Ernest Fink. And we'll call Ms. Brotman. You may. Thank you, Your Honor. May I have a piece of court? My name is Ellen Brotman and I'm here for the H.K.A. of Berkshire Police. I request that you give us a few minutes for Brotman. Okay. That request will be granted. As has been noted, I am going to be discussing the law session today. And I wish I could start with prejudice because it's clear that in Mr. Fink's case there was prejudice. But let me go right to whether you interpret this as a benefits fraud or a straight contract fraud. The loss in this case was not $135 million. No victim of this offense suffered a reasonably foreseeable pecuniary harm in that amount. And the district court got this right in her restitution opinion. And she got it completely wrong in her lawsuit opinion. But pecuniary harm is not the only element of harm in this case, is it? It's not the only element of harm, Your Honor. And in the objections to the recent report that I filed, maybe years ago actually, one of the things that I suggested at that time was that there could be an upward bump, say, for the other kinds of harm. Because the DBE fraud has two objectives. It wants to give a disadvantaged business business. And from that business grow two benefits. One is money. That's the pecuniary harm. So a DBE supplier will make a profit on that contract. But the other benefit that the DBE policy tries to give is context in the industry and experience. And, you know, back when I was writing these objections, I thought maybe that's not accounted for. However, in terms of sentencing, what I argued was, or what I argued in the county appeal, is that that's the part, that harm, that harm that's caused by that particular fraud is actually taken account for by the first seven levels of base offence. And every offence has a base offence level. Fraud has a base offence level, in this case, of seven. That seven accounts for this unquantifiable harm. But isn't there a third area of harm, too? Isn't there the harm that Fink and Nagel, or the corporation, would not have gotten the contract in the first place unless they put up the fraud that they had a DBE subcontractor participating with them. They couldn't get the contract to begin with unless they had a ten percent, at least a ten percent participation by a DBE subcontractor. And that by creating this farce that they did, they were getting business that they should not have gotten. I do not believe that the facts demonstrated the facts, Your Honour. I think that there were very few companies, actually maybe one or two companies, that were in the business of supplying these concrete beams and bridges to PANDA and to the U.S. DOJ during the relevant time period. And I don't think there was proof that SBI and CPS would not bid in the money for these contracts or would have gotten these contracts. Were there other contractors bidding for the contracts? I believe there were. And didn't those other contractors have to have ten percent DBE participation? They did. And weren't they put at a disadvantage, not DBE contractors but regular contractors, put at a disadvantage by the fact that Fink and Nagel didn't really have ten percent participation. They were just misrepresenting their situation. Well, and then, so assume that that's correct, Judge. And then what you're saying is there are actually three different victims, three different potential victims of this fraud. One is the government. And the district court said the government can suffer a pecuniary harm from this fraud because it might pay a premium to have a DBE do this work. So you have the government victim who pays the premium. You have the hypothetical legitimate DBE who doesn't get this work and loses the profit. And the DBE would also have another company that would have gotten this contract that also would have lost that profit. Now, that might be right. That might be the right analysis. It wasn't the analysis the government put forward. And even if it is, even if there are, you know, not one or two but three victims, it's still a net loss analysis. The loss still is not $135 million. It's still the profit that those companies are losing. Well, first of all, let's go back to your argument as to, let's look at the application notes from the guidelines, because I think in this case they're crucial. You argue that the general rule should apply, correct? Then the government's arguing that the special rule that applies to government benefits under 3F Roman numeral, 3F small i, small two i's, ii. They're arguing that that applies. Okay. Does it really make any difference which of those two applies? It really doesn't, Judge. And it doesn't make a difference because even if it's a benefit fraud or if it's a contract fraud, it's still going to be a net analysis. If you follow Rutgers and Leahy and Maxwell and say this is benefits fraud, then you have to follow what? You have to follow what the district court did in White and say the benefit that is being diverted here, this benefit, it's not who's dams, it's not what was pumped, it's a commercial opportunity. That is the benefit that the government is getting. And that benefit has a pecuniary value of profit. And the reason we know that's right, the reason we know it has huge profit, is because we can use the full contract amount and apply this application note and say the benefits diverted is $135 million. Every time you do it, you have to have it done with impartial. Because every single time, it will overstate the seriousness of the offense. Well, maybe the guidelines ought to be changed, but the fact that we don't agree with the guidelines doesn't mean that we can ignore them. If we think that the guidelines are too harsh, we can grant a 10-level decrease. I don't think the guideline does need to be changed. I think that it's clear, I think it was clear in Tupou, and it was clear from the 2001 amendment to the guideline, and this guideline in particular, that what the commission intended was for a net benefit to be the amount of loss. I mean, net loss is the overarching principle of loss determination, and there's all kinds of fraud, even in the case where there was a contract that was obtained by a client. But isn't that the credit? Aren't you saying that 2B1.1 has to work here as a credit? Because it seems clear to me that 3F2 is all about face value. And I do not, I am talking about that 2B1.1, under 2B1.1 you would apply 3B1.1, and I think even under, I think even under 3F2 you would have to apply 3B1.1. And the reason that I say that is because 3B1.1 applies to all the other provisions in the guidelines, to all the other special rules, except 3F05, which cards out credit convenience. And it doesn't include DPP fraud in there. So I think it's clear that any other kind of fraud with crediting provisions applies. So even if you say it's the full value of the contracts. It isn't. I mean, Mr. Brantler can speak for the government, but when you look at this, isn't the government essentially saying that this was such a massive fraudulent undertaking? That Schoolkill just basically put Marikina in this business and did everything for them, did the estimating, did the bidding, fraudulently walked around with shirts and hats and signs on their trucks. That in 300 plus cases, that they displaced so many others from the opportunity to do this kind of highway or mass transit work. I mean, aren't they making some sort of argument here that this credit should not apply? Because they basically say the credit shouldn't apply. So I take it that they're saying that because of the nature of the offense. I'm not really sure what the government's position is on it because the government made the motion for the downward departure. So it's the government that says you need a 10 level downward departure here because you're overstating the seriousness of the offense when you use it as value of the contracts. Every time you use it as value of the contracts. But they're saying that that is the regulation that applies. That is the comment in the guidelines that applies. And we have to take into consideration what it's doing in this case. Absolutely. But what I'm saying is that when you interpret, if you are saying this is a benefits fraud, and I don't, you know, I've made jargon with my police. I don't think this is the type of benefits that is covered by benefits fraud. And I think when this court will lose a problem that benefits are net benefits. Right? The delta between what you should have gotten and what you get. The problem with your argument there is there's a lot of case law going the other way. It doesn't mean those cases are right. But you've got brothers, Leahy and Maxwell all sort of staring you in the face. But what's interesting is brothers didn't do any real analysis of this issue. Brothers doesn't go into any analysis of the issue. Nobody argued this issue with brothers. And then Leahy says, brothers hold this is a benefit. And then Maxwell says, brothers and Leahy hold this is a benefit. And then Julio doesn't want to talk about it at all. It was assumed. Our NPO Julio was assumed. Non-contested point. Now it's being contested. Exactly. And that's why I said this really is a case of personal pressure. I think the point that you're making, Judge Fischer, about this is a bad point. This is a really bad thing. That comes after you make the proper law situation. And so, you know, this has to be focused on if you're calling this a benefit then you have to say what is the benefit that DBE would have gotten? Because it's a legitimate DBE that's really being deprived of something here. But isn't that too speculative to say what another DBE might have gotten or not gotten? Well, let's just say, you know, there's some element of speculation but it's also an estimate. Because what you're doing is you're trying to provide opportunities for DBEs. You're not trying to give them something. You're just trying to ease their entry into an industry. And when you ease their entry into an industry, they get a contract and then they get profit on the contract. The DBE wasn't going to obtain $135 million dollars. And that's what the judge in the White case says the change in the language in 2001 in this application, though, which Bruggess and Leahy both predate, even though they're later decided cases, their situation isn't following their guidelines. But, but, Schuylkill would not have gotten the $135 million in the first place if it hadn't misrepresented what it was. Schuylkill didn't get $135 million either. I mean, what Schuylkill got was $135 million worth of contracts. But the other important principle that we know is the thief who steals a million dollars deserves a harsher sentence and gets a contract for a million dollars and then performs it. And that's the important piece here. That's why this oversees the seriousness of the offense. I mean, you know, my conclusion in my brief was Schuylkill got $135 million less the modest fixed fee for each contract. But also less the amount it costs to create those bridges. I mean, that's not, they're not making $135 million in bridges. And, you know, DOT isn't giving back any bridges either. They have $135 million worth of bridges as the district court pointed out in her restitution opinion. They fought full contract value. To me, it was interesting that the district court identified this potential harm that DOT actually could have suffered. Maybe they didn't give the contract to the lowest bidder. They gave the contract to a higher bidder. Okay, let me summarize where I think you are. If the special rule, if 3FII applies, you want us to apply the credit against loss. I want you to apply the credit against loss. That's really what I want you to do. Either or both, actually. I want you to interpret that net benefit as being a profit that the beneficiary would have gotten. That's the pecuniary harm that's suffered. Well, if we go under F, we don't get the pecuniary harm. If you go under F, well, I think that if the benefit is when you measure the benefit, when you measure the benefit, you have to measure the net benefit. I think that's the best. But that's where the credit comes in. Yes, that's where the credit comes in. You may not be able to get this all the way you want it. The argument that you're trying to make is a dual argument. I don't see that you go back to the language of the general rule on pecuniary harm if you're talking about the government benefit. These are two very similar numbers. I actually think of them as the same number because I think that benefit That may be so, but we're dealing with that. We're dealing with the application notes. And my interpretation of the application that follows the court in white, which is that the benefit is the profit. That's what that individual would, the profit of the election contracts. Okay, all right. We'll have you back in a minute. Thank you. Okay, Mr. Brandler. Good afternoon, Your Honor. May it please the Court, my name is Bruce Brandler. This is the U.S. Attorney, and I represent the United States in this matter. I think in order to calculate the loss in this case, the Court should start by looking at what Mr. Fain pled guilty to and what he didn't plead guilty to. He pled guilty to a conspiracy to withdraw the United States Department of Transportation and its implementation of the Disadvantaged Business Enterprise Program. He didn't plead guilty to reducing defective bridges. That was never the theory of the government's case. He pled guilty to defeating the government functions of the Department of Transportation and its implementation of the Disadvantaged Business Enterprise Program. I call it DBE for short so I don't stumble along. I thought he defrauded the United States in connection with the procurement of construction contracts worth $135 million. That was a sub-part of how he defrauded the program. If you look at the indictment and the statement of facts it specifically alleges that it was a client conspiracy, a conspiracy to defraud the agency and its implementation of this program. The program is set out as a very heavily regulated program entitled Forty-Five Post-Federal Regulations Part 26. In Section 1, it sets the objectives of the program. The objectives of the program is not to build bridges. It's not to build highways. It's not to build airports. It's not to build healthcare or these duplicate contracts that DBEs use. It's to make sure they get contracts. And that's why the case law suggests that the program is concerned with who does the work. Exactly. In determining penalty here it's all about the loss. Exactly. And the loss is about $135 million in construction contracts. $136 million. We've arrived. Yeah, we've arrived. But the DBE program wanted a legitimate DBE to get $136 million in contracts here. Judge Roth made the point those contracts that Snoop Dogg products got here would have went to the American who was acting as the old credo the sham DBE. They got $136 million in contracts that were not meant for Marikina. It was meant for legitimate DBEs. Let me ask you this. They weren't meant for Schuylkill. They weren't meant for Schuylkill. It certainly wasn't meant for Schuylkill. Because Marikina was not going to get the whole $137 million. They were a subcontractor. They were subcontractors. And just to clarify, I think the court may misunderstand that Snoop Dogg products was a supplier in this scenario. The general contractors are the ones that bid to PennDOT to get the job. And when they bid to PennDOT to get the job, they have to certify that 10% of the contracts are going to go to DBEs. So if it's a $100 million contract, $10 million has to go there. What Schuylkill products did is they would get on the computer using Marikina's email address, pretend to be Marikina, and say, yes, we're going to get $10 million from these contracts. They've totally deceived the entire regulatory scheme by pretending to be Marikina and sending in workers after this and wearing dirty t-shirts. We know all that, and that's why Fink pleaded guilty. But let's focus on the loss which drives the sentence. And my question to you, Mr. Brandler, is suppose a contractor fraudulently obtains federal contracts worth $136 million and does no work. What is the loss amount? $136 million. And how in the world can the loss be $136 million in this case when they did all the work and as far as we know it was all done in a successful workmanlike manner? That sounds like one of the most illogical arguments I've ever heard. I don't believe so because the government wasn't concerned with building the bridges. That's why I started out by saying what he pled guilty to in this case and what was charged was not protecting the bridges or blue bridges. But under that analysis what you're basically telling us is when someone defrauds the DBE program the loss is irrelevant. The harm is this non-pecuniary harm to the integrity of the DBE program and the numbers don't matter thereafter. But what I'm troubled by is the numbers do matter because the numbers in every case involving finance drive the punishment. And the very strange thing about this case this is really through the looking glass is that I think they asked for the Indian Finance Council asked for a guidelines range of 57-71 and they ended up with 51-60 after they climbed the ladder and then came back down the ladder and then you have 51. It's a very peculiar set of figures. Getting to the harmless error we believe even if there was error in the calculation it would be harmless error. But I don't want to skip ahead to that point because I really think the board needs to understand that pecuniary harm is important here but there wasn't pecuniary harm to the government. We wanted 136 million dollars in contracts to go to DBE and that's being taxed. That's 136 million dollars. You're on pecuniary harm. Take it back to the question I had to opposing counsel. You're asking no for the special rule to apply. Yes. Now pecuniary harm doesn't appear in there in the special rule. That's right. It appears in the general rule. Now you want the special rule to apply and you argue this is a government benefit to get that rule to apply. Is it a grant or is it an entitlement program? I would say it's an entitlement program. If any. This is not an exhaustive. So you think it's an entitlement program. It's closest to an entitlement program. Okay. Now it talks about the benefit not less than the value of the benefits. We can read that. If you go up above them why isn't credits against loss? I mean how can you the losses shall be reduced by the following. The money returned and the fair market value, the property returned and the fair market  How can you avoid the reference to services rendered? I think there's two reasons why 3EI doesn't apply when you go to the special rules of 3F. What are those reasons? Number one is and it's funny with the easier one the rule in 3EI talks about the fair market value of the services rendered prior to the detection of the crime. We say there was no fair market value of these services even though the bridges were built. They were built by   gave no value to the government because the government in the DBE program is not concerned with getting the bridges built. That's why I go back to the fair market value. But if you really believe that you would not have asked for a 10 level downward departure. I've never seen the government be so generous with their departure motions. Because you knew it wasn't right. What was it? It's the point that Ms. Bachman made. I think she made it correctly. There's a difference between a defendant who steals $135 million and just takes the money and goes on a trip somewhere and spends it. And a person who... But that's what I just asked you a minute ago. You said the loss is the same. The loss is the same. But that's not             saying. That's not what the judge says. That's not what the judge says. And it's not what          It's not what the judge says. And that's not what the judge says. And  not what the judge says. And that's not what the judge says. So it  not   to    and to deprive the defendant of our rights. But it is for the defense to defend the defendant of our rights.        defend the defendant of our rights. And it is for the they are going to defend the defendant of our right. So I think it's important that   it clear that we are fighting in defense of our rights. So let me first tell you what this is about. I want to just mention the court yesterday about the name of Harlow etc. In the district courts opinion denied bail pending appeal. Mr. Kent quoted a portion of the opinion but did not quote the portion where the defendant suffered no pressures from the loss calculation. She said that because even if the calculation was in error my departure would have been my departure. I want to take you back to 3F 5. But  you talking to 3F 5 about a loss under 3F 5? Okay. But that's not 3F 2. That's 3F 2. So how can you say that 3E doesn't apply to 3F 2 when it clearly said it doesn't apply to 3F 5? That was Ms. Bonner's point in her brief. She said it doesn't apply because the value of 3F 2 is the same as